1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SUSAN PASKOWITZ, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>RIGHTSIDE GROUP, LTD., DAVID E. PANOS, TARYN NAIDU, DIANE M. IRVINE, ROBERT J. MAJTELES, JAMES R. QUANDT, RICHARD C. SPALDING, DONUTS INC., and DTS SUB INC.,<br><br>Defendants. | NO. 2:17-cv-00992<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**<br><br>**JURY DEMAND** |

Plaintiff, by her undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to herself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1.  This action stems from a proposed transaction announced on June 14, 2017 (the "Proposed Transaction"), pursuant to which Rightside Group, Ltd. ("Rightside" or the "Company") will be acquired by Donuts Inc. ("Parent") and its wholly-owned subsidiary, DTS Sub Inc. ("Merger Sub," and together with Parent, "Donuts").

2.  On June 13, 2017, Rightside's Board of Directors (the "Board" or "Individual

CLASS ACTION COMPLAINT - 1

BRESKIN | JOHNSON | TOWNSEND PLLC
1000 Second Avenue, Suite 3670
Seattle, Washington 98104  Tel: 206-652-8660

Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement"). Pursuant to the terms of the Merger Agreement, Donuts commenced a tender offer, set to expire on July 26, 2017, and stockholders of Rightside will receive $10.60 per share in cash.

3. On June 27, 2017, defendants filed a Solicitation/Recommendation Statement (the "Solicitation Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Solicitation Statement omits material information with respect to the Proposed Transaction, which renders the Solicitation Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Solicitation Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over all claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Rightside common stock.

9. Defendant Rightside is a Delaware corporation and maintains its principal

CLASS ACTION COMPLAINT - 2

1  executive offices at 5808 Lake Washington Blvd. NE, Suite 300, Kirkland, Washington 98033.

2  Rightside's common stock is traded on the NasdaqGS under the ticker symbol "NAME."

3      10.      Defendant David E. Panos ("Panos") is a director and Chairman of the Board of Rightside.

4      11.      Defendant Taryn Naidu ("Naidu") is a director and Chief Executive Officer ("CEO") of Rightside.

5      12.      Defendant Diane M. Irvine ("Irvine") is a director of Rightside. According to the Company's website, Irvine is Chair of the Compensation Committee and a member of the Nominating and Governance Committee.

6      13.      Defendant Robert J. Majteles ("Majteles") is a director of Rightside. According to the Company's website, Majteles is Chair of the Nominating and Governance Committee, a member of the Audit Committee, and a member of the Compensation Committee.

7      14.      Defendant James R. Quandt ("Quandt") is a director of Rightside. According to the Company's website, Quandt is Chair of the Audit Committee and a member of the Compensation Committee.

8      15.      Defendant Richard C. Spalding ("Spalding") is a director of Rightside. According to the Company's website, Spalding is a member of the Audit Committee and the Nominating and Governance Committee.

9      16.      The defendants identified in paragraphs 10 through 15 are collectively referred to herein as the "Individual Defendants."

10      17.      Defendant Parent is a Delaware corporation and a party to the Merger Agreement.

11      18.      Defendant Merger Sub is a Delaware corporation, a wholly-owned subsidiary of Parent, and a party to the Merger Agreement.

**CLASS ACTION ALLEGATIONS**

19.      Plaintiff brings this action as a class action on behalf of herself and the other public stockholders of Rightside (the "Class"). Excluded from the Class are defendants herein

and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

20. This action is properly maintainable as a class action.

21. The Class is so numerous that joinder of all members is impracticable. As of June 12, 2017, there were approximately 19,287,144 shares of Rightside common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

22. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

23. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

24. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

25. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on behalf of the Class is appropriate.

**SUBSTANTIVE ALLEGATIONS**

*Background of the Company and the Proposed Transaction*

26. Rightside is a recognized leader in Internet domain name services.

27. The Company is the industry's only end-to-end vertically integrated provider operating at scale and able to service all aspects of a domain name.

28. Rightside is also a chief participant in a historic expansion of the Internet name space – broadening domain name extensions from just 22 legacy options such as .com and .net to potentially more than 1,300 including approximately 700 generic Top Level Domains ("gTLDs") and 600 branded Top Level Domains (like .Loreal or .Google).

29. Rightside recently launched a new registry platform that offers one of the largest portfolios of domain name extensions on the market, including highly desirable gTLDs such as .REVIEWS, .SOCIAL, and .ATTORNEY.

30. The Company currently has 16 million domain names under management, more than 20,000 distribution partners, an award-winning retail registrar, and the leading domain name auction service through its NameJet joint venture.

31. The vertical integration between its registry and registrar businesses uniquely positions Rightside to service every stage of the domain name lifecycle – from discovery and registration to development and monetization of domain names – while also supporting broad market adoption and usage.

32. Pervasive megatrends are driving substantial growth potential in the Internet's multi-billion dollar domain name industry, and Rightside is well-positioned to benefit from increased momentum in the new gTLD expansion program.

33. The Company's business model and attractive domain name unit economics dramatically improve Rightside's revenue, margin, and free cash flow opportunity. According to its website, these key drivers place Rightside in a solid position for compelling growth and value creation.

34. However, on June 13, 2017, the Board caused the Company to enter into the

Merger Agreement, pursuant to which Rightside will be acquired for inadequate consideration.

35. The Individual Defendants have all but ensured that another entity will not emerge with a competing proposal by agreeing to a "no solicitation" provision in the Merger Agreement that prohibits the Individual Defendants from soliciting alternative proposals and severely constrains their ability to communicate and negotiate with potential buyers who wish to submit or have submitted unsolicited alternative proposals.

36. Further, the Company must promptly advise Donuts of any proposals or inquiries received from other parties.

37. Moreover, the Merger Agreement contains a highly restrictive "fiduciary out" provision permitting the Board to withdraw its approval of the Proposed Transaction under extremely limited circumstances, and grants Donuts a "matching right" with respect to any "Superior Proposal" made to the Company.

38. Further locking up control of the Company in favor of Donuts, the Merger Agreement provides for a "termination fee" of $7.7 million, payable by the Company to Donuts if the Individual Defendants cause the Company to terminate the Merger Agreement.

39. By agreeing to all of the deal protection devices, the Individual Defendants have locked up the Proposed Transaction and have precluded other bidders from making successful competing offers for the Company.

40. The merger consideration to be paid to plaintiff and the Class in the Proposed Transaction is inadequate.

41. Among other things, the intrinsic value of the Company is materially in excess of the amount offered in the Proposed Transaction.

42. Further, the merger consideration fails to adequately compensate the Company's stockholders for the significant synergies resulting from the merger.

43. Accordingly, the Proposed Transaction will deny Class members their right to share proportionately and equitably in the true value of the Company's valuable and profitable business, and future growth in profits and earnings.

*The Solicitation Statement Omits Material Information, Rendering It False and Misleading*

44. Defendants filed the Solicitation Statement with the SEC in connection with the Proposed Transaction.

45. The Solicitation Statement omits material information regarding the Proposed Transaction, which renders the Solicitation Statement false and misleading.

46. First, the Solicitation Statement omits material information regarding the Company's financial projections and the analyses performed by the Company's financial advisor, Barclays Capital Inc. ("Barclays"), in support of its so-called fairness opinion.

47. With respect to Rightside's financial projections, the Solicitation Statement fails to disclose: (i) net income; (ii) interest; (iii) income taxes; (iv) depreciation and amortization; (v) stock-based compensation; (vi) gains, losses, and expenses; and (vii) a reconciliation of all non-GAAP to GAAP metrics.

48. With respect to Barclays' *Discounted Cash Flow Analysis*, the Solicitation Statement fails to disclose: (i) the projected after-tax unlevered free cash flows for the Company as used by Barclays in the analysis and the constituent line items used to calculate unlevered free cash flow; (ii) the terminal value of the Company; and (iii) the inputs and assumptions underlying the range of after-tax discount rates of 15.0% to 17.0% and the range of 3.0% to 5.0% of annual perpetuity growth rates for the Company.

49. With respect to Barclays' *Selected Comparable Company Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the companies observed by Barclays in the analysis.

50. With respect to Barclays' *Selected Precedent Transactions Analysis*, the Solicitation Statement fails to disclose the individual multiples and financial metrics for the transactions observed by Barclays in the analysis.

51. With respect to Barclays' *Transaction Premium Analysis*, the Solicitation Statement fails to disclose: (i) the strategic technology transactions observed by Barclays; and (ii) the premiums paid in such transactions.

52. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

53. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "The Solicitation or Recommendation."

54. Second, the Solicitation Statement omits material information regarding potential conflicts of interest of the Company's officers and directors.

55. Specifically, the Solicitation Statement fails to disclose the timing and nature of all communications regarding future employment and/or directorship of Rightside's officers and directors, including who participated in all such communications.

56. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

57. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "The Solicitation or Recommendation."

58. Third, the Registration Statement fails to disclose whether any non-disclosure agreements executed by Rightside and the prospective bidders contained standstill and/or "don't ask, don't waive" provisions that are or were preventing those counterparties from submitting superior offers to acquire the Company.

59. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

60. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "The Solicitation or Recommendation."

61. Fourth, the Solicitation Statement omits material information regarding potential conflicts of interest of Barclays.

62. For example, the Solicitation Statement fails to disclose Barclays' holdings in Rightside's, Donuts', and their affiliates' stock.

63. Full disclosure of all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

64. The omission of this material information renders the Solicitation Statement false and misleading, including, *inter alia*, the following section of the Solicitation Statement: "The Solicitation or Recommendation."

65. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to Rightside's stockholders.

## COUNT I

**(Claim for Violation of Section 14(e) of the 1934 Act Against Defendants)**

66. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

67. Section 14(e) of the 1934 Act states, in relevant part, that:

> It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

68. Defendants disseminated the misleading Solicitation Statement, which contained statements that, in violation of Section 14(e) of the 1934 Act, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not misleading.

69. The Solicitation Statement was prepared, reviewed, and/or disseminated by defendants.

70. The Solicitation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

71. By virtue of their positions within the Company and/or roles in the process and the preparation of the Solicitation Statement, defendants were aware of this information and their duty to disclose this information in the Solicitation Statement.

72. The omissions in the Solicitation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares in connection with the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

73. Defendants knowingly or with deliberate recklessness omitted the material information identified above in the Solicitation Statement, causing statements therein to be materially incomplete and misleading.

74. By reason of the foregoing, defendants violated Section 14(e) of the 1934 Act.

75. Because of the false and misleading statements in the Solicitation Statement, plaintiff and the Class are threatened with irreparable harm.

76. Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**(Claim for Violation of 14(d) of the 1934 Act Against Defendants)**

77. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

78. Section 14(d)(4) of the 1934 Act states:

> Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

79. Rule 14d-9(d) states, in relevant part:

> Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

80. The Solicitation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Solicitation Statement false and/or misleading.

81. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and misleading.

82. The omissions in the Solicitation Statement are material to plaintiff and the Class, and they will be deprived of their entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the tender offer.

83. Plaintiff and the Class have no adequate remedy at law.

## COUNT III

**(Claim for Violation of Section 20(a) of the 1934 Act
Against the Individual Defendants and Donuts)**

84. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

85. The Individual Defendants and Donuts acted as controlling persons of Rightside within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their

positions as officers and/or directors of Rightside and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Solicitation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

86. Each of the Individual Defendants and Donuts was provided with or had unlimited access to copies of the Solicitation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

87. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Solicitation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Solicitation Statement.

88. Donuts also had direct supervisory control over the composition of the Solicitation Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Solicitation Statement.

89. By virtue of the foregoing, the Individual Defendants and Donuts violated Section 20(a) of the 1934 Act.

90. As set forth above, the Individual Defendants and Donuts had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.

91. As a direct and proximate result of defendants' conduct, plaintiff and the Class

are threatened with irreparable harm.

92. Plaintiff and the Class have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Solicitation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.


DATED this 30th day of June, 2017.

                                  BRESKIN JOHNSON & TOWNSEND, PLLC

                                  By: */s/ Roger Townsend*
                                       Roger Townsend, WSBA # 25525
                                       1000 Second Avenue, Suite 3670
                                       Seattle, Washington 98104
                                       206-652-8660 Phone
                                       rtownsend@bjtlegal.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

OF COUNSEL:

RIGRODSKY & LONG, P.A.

By: */s/ Brian Long*
    Brian D. Long
By: */s/ Gina Serra*
    Gina M. Serra
    2 Righter Parkway, Suite 120
    Wilmington, DE 19803
    302-295-5310